UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| YVONNE STAMMLER, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:16-cv-11713-IT |
| | * | |
| JETBLUE AIRWAYS CORPORATION, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM AND ORDER

August 15, 2018

TALWANI, D.J.

Plaintiff Yvonne Stammler brings this case against her former employer, Defendant JetBlue Airways Corporation ("JetBlue"), for claims arising from JetBlue's termination of her employment as a flight attendant. Stammler alleges she was terminated in retaliation for reporting a safety violation. She brings claims for wrongful termination in violation of public policy (Count I) and breach of contract or quasi-contract (Count II).

Pending before the court is Defendant's Motion for Summary Judgment [#52]. For the reasons set forth below, the summary judgment motion is ALLOWED.

I.  Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. LeBlanc v. Great Am. Ins. Co., 6

F.3d 836, 841 (1st Cir. 1993). The moving party "bears the initial responsibility of . . . identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the non-moving party "must provide sufficiently supported evidence . . . to establish a genuine issue for trial." Cherkaoui v. City of Quincy, 877 F.3d 14, 24 (1st Cir. 2017) (citing Leblanc, 6 F.3d at 841). A non-moving party who bears the burden of proof on a given claim "must present 'definite, competent evidence' sufficient to establish the elements of her claim in order to survive a motion for summary judgment," which "is no less true in . . . retaliation cases where motive is at issue." Pina v. Children's Place, 740 F.3d 785, 795-96 (1st Cir. 2017) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)).

II. Facts

The record is recited here in the light most favorable to Stammler, the non-moving party, as required on summary judgment. See LeBlanc, 6 F.3d at 841.

Stammler was offered employment as a flight attendant with JetBlue on an at-will basis. Def.'s Loc. R. 56.1 Stmt. ("Def.'s Facts") ¶¶ 57-58 [#55]; Pl.'s Loc. R. 56.1 Stmt. ("Pl.'s Facts") ¶ 2 [#61]. She began her employment on January 7, 2015. Def.'s Facts ¶ 2 [#55].

Stammler was assigned to work four flights on March 4, 2015. Id. ¶ 64. She was scheduled to end her work day at 8:53 p.m. EST, for a scheduled duty time of over thirteen hours. Id. ¶¶ 63, 65-66.

After the third flight landed but before the fourth flight departed, Stammler made four phone calls. Id. ¶¶ 69-133.

In the first phone call, Stammler stated to "Brian," an employee of JetBlue's Crew Services department, that mechanical issues delaying Flight 112 may require her actual duty time to exceed sixteen hours:

> Stammler: So, I'm in Chicago and there's a problem with the plane. It's broken right now and they've got maintenance. They're doing power-down and all that stuff. And so, so it looks like it's going to be a little bit. I'm currently, like, right now pushing right about 13 hours of duty and this [flight] is blocked at 2:18 [two hours and eighteen minutes]. So, it's going to put me over 15 and plus another, plus another, 15 minutes for [UNINTEL], you know, after the block time or whatever for being on duty. And we haven't even boarded. So, I'm thinking this is pushing me -- this is going to push me just over 16 [hours].
>
> . . .
>
> Brian: Okay, I just looked into [UNINTEL] legal due to the fact that you were originally scheduled for 1313 [thirteen hours and thirteen minutes] as far as your duty. And now, since you're up to 1515 [fifteen hours and fifteen minutes], that's an unforeseeable circumstance. So, you are still legal to operate.
>
> Stammler: Right, yeah. No, I'm not calling in to say I'm not, not legal at the moment, or whatever. But, I've got, what'd say, 1515 [fifteen hours and fifteen minutes] or something?
>
> Brian: Yeah.
>
> Stammler: So, I've got 45 minutes basically and we haven't boarded or even gotten an okay to board up a plane. So, at what time can I call back?
>
> Brian: I would say maybe within an hour or so.

Def.'s Ex. W 2:10-22, 4:5-21 [#57-23].

In the second phone call, approximately thirty minutes later, Stammler told an unidentified employee of JetBlue's Crew Services department that completing the fourth scheduled flight would result in sixteen hours of actual duty time, and that sixteen hours of actual duty time would not be "legal" under the "FAA"[1]:

---

[1] Plaintiff cites a Federal Aviation Administration ("FAA") Guidance Letter in her summary judgment papers to show that she was not mistaken in believing that remaining on duty

3

> Stammler: I called about a half hour ago and I'm officially going to sign out. I am signed out. I am not legal to do this -- this flight.
>
> . . .
>
> Man 1: You said you're not legal to do the trip?
>
> Stammler: No, I started at 7:40 Eastern Time and this is blocked at 218 [two hours and eighteen minutes] plus the 15 minutes of -- end duty, so that puts me over 16 hours. It's not legal.
>
> Man 1: Yeah, but you can go up to 18 hours.
>
> Stammler: Pardon?
>
> Man 1: You can work up to 18 hours. We can't schedule you more than that. But we didn't schedule you more than 14, so you ought to be able to finish the trip.
>
> Stammler: It's not--no, it's not legal, FAA. It's not legal.
>
> Man 1: It is legal, but if you'd like, I can have you speak to in-flight, if you just hold on one second.

Id. at 6:9-7:7. Stammler was transferred to another Crew Services representative, Ryan Berry. Stammler again stated her understanding that it would not be "legal FAA-wise" to work over 16 hours, and Berry pointed in response to rules under Defendant's Inflight Scheduling Manner ("ISM"):

> Ryan Berry: Hey, what's going on Yvonne?
>
> Stammler: I am in Chicago and I believe that I am not legal to do this flight, that I would be timing out and it would put me over 16 hours for a duty day. My understanding is that that's not legal FAA-wise, to work over 16 hours.
>
> Ryan Berry: Okay. So, your original duty day was 1313 [thirteen hours and thirteen minutes]. So, if you look in the ISM on page 98, a flight attendant actually never times out. If you are projected to reach 18 hours then you have the option of calling

---

was illegal. Pl.'s Facts ¶ 1; see Pl.'s Ex. A 3 [#59-1]. The parties dispute whether the Guidance Letter supports her position. As discussed below, the court need not reach this issue.

E18. But flight attendants can go up to 18 [hours] without, you know, having to make that decision of whether or not they want to be removed.

. . .

Stammler: So, I can never time out, ever?

Ryan Berry: No.

. . .

Ryan Berry: You never time out, but you have the option of calling E18 when you are projected to go over 18 hours. [A]nd you're only at 15 right now, 15 and change.

Stammler: No, it'll be 16 [UNINTEL].

Ryan Berry: Okay, yeah, so even 16. So, you're not -- you've still got about two hours to play with . . . .

Id. at 8:6-21, 9:2-4, 9:12-20.

In the third phone call, Stammler that she was tired and confused and Crew Services representative "Brian" stated that Stammler could not yet invoke the E18 policy because JetBlue's computer system was not projecting Stammler's actual duty time to be 18 hours or more:

Stammler: I'm so tired.

Brian: Okay. This is the thing. Now, you guys aren't at 18 hours, so you guys can't call out E18, so how would you want me to remove you?

. . .

Brian: Because as of now, I have you guys having the duty day of 17 hours and 33 minutes, and you guys are supposed to get back out at 2140.

Stammler: I'm confused. The Captain just said they're removing us from duty and putting the JFK inbound flight attendants on the next flight.

Brian: Yeah, I understand that's the plan. But as of now, you guys aren't at 18 hours so we can't remove you guys E18. So if you guys are going to come off, what code would you want me to use?

5

<u>Id.</u> at 11:12-16, 11:22-12:9. Shortly thereafter, Stammler was transferred to In-Flight Crew Recovery and stated that she intended to invoke the E18 policy if she accrued eighteen hours of duty time:

> Ossam: We have the flight attendant's that's coming in 105 that's going to turn this plane around. However, in the ISM, either you hit 18 [hours] or you're projected to hit 18 [hours].
>
> Stammler: Mm hmm.
>
> Ossam: Then we can remove you E18. Right now, you're not projected at that. So, it's an integrity issue.
>
> . . .
>
> Ossam: Okay, but you told the pilots that you're coming off. Correct?
>
> Stammler: No, I was waiting for the pilots to make a phone call. I said I wouldn't go past 18. I never said that I'm not going past 18. I said that I was going to wait and see if we could get it out before 18. If you could not get it out past 18, then I wasn't going to do it and I would call in E18, if we went over 18.
>
> . . .
>
> Stammler: Yeah. No, I never expressed that I was going to do anything other than the E18. I was going to do E18 if I went over 18.
>
> . . .
>
> Stammler: That's what said (sic). I said if I hit 18, then I'm calling -- I'm doing the E18.
>
> Ossam: That is --
>
> Stammler: But until then, I was, you know, just going along with whatever they were doing. They --
>
> Ossam: Okay.

<u>Id.</u> at 13:2-9, 13:19-14:3, 14:13-16, 15:16-23.

About an hour later, the flight's Captain called Crew Services and stated that "[o]ur flight attendants are coming up, I mean, having a real long day, and they're not -- they're not going to work this flight back to Boston if we go over 18 hours." Def.'s Ex. Z 3:16-19 [#57-26].

Stammler subsequently initiated her fourth phone call to Crew Services, during which she was told that she shouldn't be using her phone when passengers are on board:

> Stammler: The fueler is not even here and stuff, so --
>
> Ryan Berry: Okay. So, you guys are boarded right now, right?
>
> Stammler: We're boarded, but the [UNINTEL] door is still open and we're not fueled.
>
> Ryan Berry: Okay. Crew members aren't supposed to be on their cellphones when there's customers on board, so I'm gonna go ahead and end the call. And if you do become illegal, we'll make sure to tell the captain. But you really shouldn't be using your cell phone with the customers on the plane, okay?
>
> Stammler: Okay. And what time will I be illegal? At 1007?
>
> Ryan Berry: We'll call you. You still have -- you still have quite some time. You're still only at 1723 [seventeen hours and twenty-three minutes].
>
> Stammler: You said you'd call me, but --
>
> Ryan Berry: Yeah. Okay, we've got to hang up the phone and make sure you attend to the customers, okay? Have a good night.

Def.'s Ex. W 25:16-26:14 [#57-23].

Shortly thereafter, JetBlue's computer system projected an actual duty time of eighteen hours and one minute for Stammler, and she and another flight attendant were removed from Flight 112 per the E18 policy. Def.'s Facts ¶¶ 139-41 [#55].

JetBlue suspended Stammler in March 2015 and terminated her employment in April 2015. Id. ¶¶ 2, 199. JetBlue identified the violation of its Personal Electronic Device policy on March 4, 2015, as the reason for both the suspension and the termination. Id. ¶¶ 199, 214.

The Personal Electronic Device policy states a flight attendant is prohibited from using a personal electronic device during boarding, and is prohibited from using voice or text functions while passengers are onboard the aircraft. Id. ¶ 51. JetBlue maintains a Progressive Guidance policy that includes four steps for discipline: Initial Progressive Guidance, Continued Progressive Guidance, Final Progressive Guidance, and Suspension/Termination. Id. ¶¶ 43-44. The steps may be accelerated, and an employee may not transition through each step prior to suspension or discharge. Id. ¶¶ 45-46. JetBlue's Inflight Bluebook Supplement states that violation of the Personal Electronic Device policy will result in Progressive Guidance that may include termination. Id. ¶ 52.

From April 2011 to April 2015, JetBlue discharged twenty-three flight attendants, including Stammler, for violating the Personal Electronic Device policy. Id. ¶ 54. Of the twenty-three flight attendants who were discharged, fifteen, including Stammler, were not at any step of the Progressive Guidance before they were suspended and terminated. Id. ¶ 55. On May 6, 2015, JetBlue terminated another flight attendant, Yocelyn Lugo, for violating the Personal Electronic Device policy. Id. ¶¶ 196. Lugo was not on any level of JetBlue's Progressive Guidance prior to her termination. Id.

III. Analysis

JetBlue moves for summary judgment on the ground that both of Stammler's state law claims are preempted by federal law, and that even if not preempted, Stammler cannot establish facts sufficient to meet her burden under either of the state law claims. Because JetBlue is correct that Stammler has not met her burden to provide sufficiently supported evidence to establish a genuine issue for trial, and that Jetblue therefore is entitled to judgment as a matter of law, the court does not need to reach the preemption issue.

### A. *Count I: Wrongful Termination in Violation of Public Policy*

Stammler claims that JetBlue terminated her in retaliation for "attempt[ing] to report a violation of relevant safety regulations and remain compliant with the law." Compl. ¶ 18 [#1-1]. Stammler claims that as a result her termination was in violation of public policy. Id. The Massachusetts Supreme Judicial Court ("SJC") has permitted redress for at-will employees based on public policy in some circumstances. See Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., 404 Mass. 145, 149–50, 533 N.E.2d 1368, 1371 (1989) ("Redress is available for employees who are terminated for asserting a legally guaranteed right (e.g., filing workers' compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury)." (internal citations omitted)). And the SJC has "held that an employee who alleged that she was discharged for enforcing safety laws, as was her responsibility, stated a claim for discharge in violation of public policy." Id. at 150, 533 N.E.2d at 1371 (citing Hobson v. McLean Hosp. Corp., 402 Mass. 413, 416, 522 N.E.2d 975, 977 (1988)).

The parties disagree whether Stammler was seeking to enforce safety laws, as would be protected under state law. However, even if Stammler could show that her conduct was protected, on summary judgment, as an at-will employee, "she had an obligation to present facts on the record that supported her claim that she was discharged for [engaging in the allegedly protected conduct]." Shea v. Emmanuel Coll., 425 Mass. 761, 763, 682 N.E.2d 1348, 1350 (1997). "An assertion or speculation that [she] was discharged for that reason is not sufficient to create a dispute of material fact concerning the reason for her discharge." Id. at 763-64. Here, Stammler has not shown facts from which a jury could conclude that she was discharged for seeking to enforce safety laws, rather than for violating company policies.

Instead, all of the evidence in the record supports JetBlue's claim of a uniformly applied policy. First, the Personal Electronic Device policy at issue was in writing. See Def.'s Ex. M [#57-13]; Def.'s Ex. Q [#57-17]. Second, the disciplinary policy made clear that violation of the Personal Electronic Device policy could result in termination. Def.'s Ex. Q 3 [#57-17]. Third, JetBlue has presented evidence that other flight attendants were routinely terminated without progressive discipline for violating the Personal Electronic Device policy. From April 2011 to April 2015, JetBlue discharged twenty-three flight attendants, including Stammler, for violating the PED policy. Def.'s Facts ¶ 54. Of the twenty-three flight attendants who were discharged, fifteen, including Stammler, were not at any step of JetBlue's Progressive Guidance before they were suspended and discharged. Id. ¶ 55. Another flight attendant, Yocelyn Lugo, was also not at any step of JetBlue's Progressive Guidance before she was terminated for violating the PED policy shortly after Stammler's termination. Finally, Stammler has made no showing that she, as a person who allegedly was seeking to enforce safety laws, was treated differently than flight attendants who were not engaging in such conduct. Indeed, she "concedes that her termination was apparently part of a blanket rule of strictly enforcing the PED policy." Pl.'s Mem. 6 [#59].

Stammler argues instead that she faced a binary choice to either violate the law or violate the Personal Electronic Device policy. Stammler alleges that JetBlue's internal policy prohibiting the use of Personal Electronic Devices while passengers were onboard placed her in an "untenable position" that "meant punishing her for refusing to break the law and/or for reporting a violation of the law that was otherwise about to happen." Id. But she cites no evidence to support this assertion, and the record is to the contrary. Stammler had already reported to JetBlue's Crew Services the perceived safety issue in three prior phone calls before any passengers boarded Flight 112. During the third call, Crew Services told her that she did not

10

qualify to be relieved under the policy until they had a schedule that would result in more than 18 hours. Def.'s Ex. W 11:13–16 ("Brian: Okay. This is the thing. Now, you guys aren't at 18 hours, so you guys can't call out E18, <u>so how would you want me to remove you</u>." (emphasis added)). At that point, she had a choice: tell the representative to remove her (without the protections of the policy) or wait until she reached 18 hours. She chose to wait until she reached 18 hours. And at that point, instead of violating the Personal Electronic Device policy to make the fourth phone call to Crew Services in anticipation of reaching 18 hours while passengers were on board the flight, Stammler could have had the flight's Captain contact Crew Services on her behalf -- which she did between the second and third phone calls, as well as after the fourth phone call ended. <u>See</u> Def.'s Ex. X 4 [#57-24].

In sum, Stammler has failed to present facts on the record that would support her claim that she was discharged for engaging in the allegedly protected conduct rather than for violating the Personal Electronic Device policy. Speculation that she was discharged for protected conduct, with nothing more, is insufficient to raise a genuine issue of material fact sufficient to establish the elements of her claim, and therefore Jetblue is entitled to judgment as a matter of law on Count I.

*B. Count II: Breach of Contract or Quasi-Contract*

JetBlue is also entitled to summary judgment on Stammler's claims that JetBlue is liable for breach of contract or quasi-contract.

First, there is no dispute that Stammler's employment with JetBlue was terminable at-will by either party. <u>See</u> Pl.'s Facts ¶ 2 [#61]; Def.'s Ex. S 4 [#57-19]. Because the employment contract between Stammler and JetBlue was terminable at-will, and because Stammler failed to show that Jetblue terminated her in violation of any public policy, JetBlue's termination of

Stammler's employment did not result in a breach of the at-will employment contract. See <u>York v. Zurich Scudder Invs. Inc.</u>, 66 Mass. App. Ct. 610, 614, 849 N.E.2d 892, 897-98 (2006).

Second, Stammler's claim for breach of quasi-contract also fails because there is no evidence in the record of any implied contract that Jetblue breached. Stammler bears the burden of proof at trial and must show "'definite, competent evidence' sufficient to establish the elements of her claim in order to survive a motion for summary judgment." <u>Pina</u>, 740 F.3d at 795-796 (quoting <u>Mesnick</u>, 950 F.2d at 822). Stammler has not proffered evidence to meet her burden and establish a triable issue of material fact relating to her claim for breach of quasi-contract. Jetblue is entitled to judgment as a matter of law as to Count II.

IV.    <u>Conclusion</u>

For the foregoing reasons, <u>Defendant's Motion for Summary Judgment</u> [#52] is ALLOWED. JetBlue is entitled to summary judgment on both counts.

IT IS SO ORDERED.

Date: August 15, 2017                                              /s/ Indira Talwani
                                                                   United States District Judge